C. Kathryn Preston, United States Bankruptcy Judge
I. Introduction
Trilogy Health Services, LLC ("Trilogy") obtained a state court judgment *16 against Misty M. White ("White") in the amount of $ 208,159.94 (the "State Court Judgment"). Now, Trilogy moves for summary judgment on Count One of its Complaint, asserting that the State Court Judgment is a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(A). Trilogy's argument primarily rests on the doctrine of issue preclusion, but there's a problem: The State Court Judgment does not contain sufficient findings and conclusions that would allow this Court to determine whether the debt is dischargeable. More importantly, Trilogy has not met its initial burden of demonstrating that it is entitled to judgment as a matter of law and that there is no genuine dispute as to any material fact. Therefore, the Court will deny Trilogy's request.
II. Jurisdiction
The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05-02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(A) and (I). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.
III. Factual and Procedural Background
Trilogy runs an assisted living, long-term care, transitional care, and skilled nursing facility, known as Highland Oaks Health Campus ("Highland"). Thomas A. Erwine ("Erwine") was a resident at Highland, but is now deceased. During his residency, Erwine received social security income, income from his pension, and annuity income. He also owned three parcels of real property and a mobile home situated on the property (the "Real Property"). White was Erwine's daughter. She was also his attorney-in-fact, and she managed his financial affairs while he was a resident at Highland.
The parties do not dispute that: (1) White was the recipient of multiple cash withdrawals from Erwine's accounts in the amount of $ 76,185.25 from January 1, 2011 to March 21, 2014; (2) White transferred $ 54,323.81 of Erwine's income to herself and others, and she would spend Erwine's money on trips, vacations, and gifts for herself, her family, and her pets; (3) White wrote several checks from Erwine's account to herself, her husband, and to "cash" in the amount of $ 20,000; (4) White used her power of attorney to open two credit cards in Erwine's name and reactivate a third card and ran up significant balances on each card shortly before Erwine's death; and (5) on September 26, 2012, while Erwine was a resident at Highland, Erwine transferred the Real Property to White for $ 1.00, even though the Morgan County Auditor valued the Real Property at $ 39,270.
White never paid Trilogy in full for the services and care provided to Erwine at Highland, even though she was aware of the debt owed to Trilogy.[1] Trilogy filed an action against White in the Morgan County Court of Common Pleas (the "State Court Case") on April 20, 2015, and the court entered summary judgment in favor of Trilogy on February 17, 2017 in the amount of $ 208,159.94.
White filed her petition for relief under Chapter 7 of the Bankruptcy Code on April 13, 2018. Trilogy filed this adversary proceeding against White on May 24, 2018, claiming that the State Court Judgment is a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(A) and (a)(4). On February 21, 2019, Trilogy filed its Motion for Partial Summary Judgment (Doc. # 41) (the "Motion").
*17 In the Motion, Trilogy asks this Court to except the State Court Judgment from White's discharge under § 523(a)(2)(A). White filed her Memorandum Contra to Plaintiff Trilogy Health Service's Motion for Summary Judgment (Doc. # 47) (the "Response") on February 26, 2019, and Trilogy filed its Reply in Support of its Motion for Partial Summary Judgment (Doc. # 48) (the "Reply") on March 5, 2019.
IV. Standard of Review
Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
If the movant satisfies this burden, the nonmoving party must then assert that a fact is genuinely disputed and must support the assertion by citing to particular parts of the record. See Fed. R. Civ. P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all justifiable inferences must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Anderson , 477 U.S. at 255, 106 S.Ct. 2505.
The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:
[T]he moving [party] may discharge its burden by 'pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case.' The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its [position]. 'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'
Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. See Schaffer v. A.O. Smith Harvestore Prods., Inc., 74 F.3d 722, 727 (6th Cir. 1996). "The substantive law determines which facts are 'material' for summary judgment purposes." Hanover Ins. Co. v. Am. Eng'g Co. , 33 F.3d 727, 730 (6th Cir. 1994). In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or *18 defenses ...." Celotex , 477 U.S. at 323-24, 106 S.Ct. 2548.
V. Arguments of the Parties
In the Motion, Trilogy contends that the State Court Judgment is a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) by virtue of the doctrine of issue preclusion. Even if the State Court Judgment has no preclusive effect in this case, Trilogy maintains that it is entitled to summary judgment because there is no genuine dispute of material fact that White engaged in constructively fraudulent transfers, which constitutes "actual fraud" under section 523(a)(2)(A). White raises a plethora of arguments in her Response,[2] but primarily argues that issue preclusion is not appropriate because the State Court Judgment does not make specific factual findings and is open to speculation.[3]
VI. Law and Analysis
Trilogy moves for summary judgment on its nondischargeability claim under 11 U.S.C. § 523(a)(2)(A). That section provides in relevant part that:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt-
...
(2) for money, property, [or] services ... to the extent obtained by-
(A) ... actual fraud ....
11 U.S.C. § 523(a)(2)(A). Because the primary function of the Bankruptcy Code is to provide a fresh start to the honest but unfortunate debtor in need of relief from the efforts of creditors, exceptions to discharge are to be construed narrowly. Andrews v. Mich. Unemployment Ins. Agency , 891 F.3d 245, 250 (6th Cir. 2018). The creditor bears the burden of proving each element of its claim by a preponderance of the evidence. Rembert v. AT & T Universal Card Servs. (In re Rembert) , 141 F.3d 277, 281 (6th Cir. 1998) (citing Grogan v. Garner , 498 U.S. 279, 287-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ).
Trilogy primarily argues that it is entitled to summary judgment under 11 U.S.C. § 523(a)(2)(A) based on the doctrine of issue preclusion. "When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action." Corzin v. Fordu (In re Fordu) , 201 F.3d 693, 703 (6th Cir. 1999) (citations omitted). Under Ohio law, *19 the doctrine of issue preclusion has four elements:
1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.
Sill v. Sweeney (In re Sweeney) , 276 B.R. 186, 189 (6th Cir. BAP 2002) (citations omitted).
White argues-and the Court agrees-that the State Court Judgment is too vague for purposes of application of the doctrine of issue preclusion. "To be entitled to preclusive effect, a judgment should have sufficient detail to enable a subsequent court to have a clear understanding of the prior court's ruling without having to speculate about the scope of the prior court's findings of fact and conclusions of law." Yust v. Henkel (In re Henkel) , 490 B.R. 759, 781-82 (Bankr. S.D. Ohio 2013) (citing Sweeney , 276 B.R. at 194 ). "This is particularly true in the context of a nondischargeability determination because it is only those damages proximately caused by the fraud that may be given preclusive effect." Yust , 490 B.R. at 782 (citations omitted). Thus, "[w]hen a final judgment is entered in multiple claims and there is no way to determine which specific claims on which the judgment is rendered, application of the doctrine of issue preclusion is not appropriate." Custom Kilns, Inc. v. Pierron (In re Pierron) , 448 B.R. 228, 236 (Bankr. S.D. Ohio 2011) ; Schmidt v. Panos (In re Panos) , 573 B.R. 723, 738 (Bankr. S.D. Ohio 2017).
The full text of the State Court Judgment reads as follows:
This matter came before the Court upon the Motion of the Plaintiff for Summary Judgment herein. The Court, being fully apprised of this matter and construing the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact, if any, timely filed in the action most favorably for the Defendant, finds that there is no genuine issue as to any material fact and that the Plaintiff is entitled to Judgment as a matter of law.
The Judgment is granted in favor of the Plaintiff on all claims in the amount of $ 208,159.94 plus interest from the date of this entry and costs.
IT IS SO ORDERED.
Trilogy asserts that the State Court Judgment was rendered on its fraudulent transfer claim under Ohio Rev. Code Ann. § 1336.04(A)(2). But the State Court Judgment does not specify the claims on which Trilogy was granted summary judgment: it simply provides that Trilogy is granted judgment on "all " claims. Nor does it provide any detailed factual findings or legal conclusions. Moreover, the damages award is not directly allocated to any of the claims (whatever those claims are). Because the State Court Judgment fails to allocate the debt between the purportedly nondischargeable claims (e.g. , fraud) and dischargeable claims (e.g. , breach of contract), and because only debts for money, property, services, or credit obtained by nefarious conduct within the parameters of § 523(a)(2) can be nondischargeable, issue preclusion is not appropriate.[4] In short, the State Court Judgment does not have sufficient *20 detail for this Court to adequately understand the prior court's ruling without having to speculate about the scope of the decision. Therefore, the Court finds that the State Court Judgment does not have preclusive effect in this case, and does not support Trilogy's nondischargeability claim.
Alternatively, Trilogy contends that even if issue preclusion does not apply, it is still entitled to summary judgment because there is no genuine dispute that White engaged in constructively fraudulent transfers under Ohio Rev. Code Ann. § 1336.04(A)(2), and § 523(a)(2)(A) encompasses fraudulent transfer schemes. Trilogy is correct that a fraudulent transfer can serve as the basis for a § 523(a)(2)(A) claim.[5] But aside from the State Court Judgment, which again is too vague for purposes of applying issue preclusion, Trilogy has not pointed to any evidence in the record showing that it sought and obtained a judgment against White on a claim under Ohio Rev. Code Ann. § 1336.04(A)(2). Even if it had, Ohio Rev. Code Ann. § 1336.04(A)(2) does not necessarily require a showing of actual intent to commit fraud. See , e.g. , Blood v. Nofzinger , 162 Ohio App. 3d 545, 560, 2005-Ohio-3859, 834 N.E.2d 358, 369 (Ohio Ct. App. 2005). Conversely, a claim under § 523(a)(2)(A) based on "actual fraud" does require proof of fraudulent intent. Husky , 136 S.Ct. at 1586-87. In order to prevail, Trilogy must show that White possessed fraudulent intent. But Trilogy has not pointed to any evidence in the record demonstrating an absence of genuine dispute regarding this issue. Therefore, Trilogy has not met its initial burden, and is not entitled to summary judgment.
VII. Conclusion
For the foregoing reasons, the Court finds that Trilogy's Motion is not well-taken. Accordingly, is it hereby
ORDERED that the Motion is DENIED .
IT IS SO ORDERED.

Trilogy has not made clear the amount that White failed to pay.

One of White's arguments is that Trilogy lacks standing. Although White makes little attempt at developing this argument, the Court feels compelled to note that Trilogy, a creditor of White by virtue of the State Court Judgment, clearly and unequivocally has standing to prosecute this dischargeability action against White. See Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."); see also O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears v. Perlin (In re Perlin) , 30 F.3d 39, 42 (6th Cir. 1994) (a non-creditor that does not have a right to payment of a debt from the debtor does not have standing to pursue a dischargeability action against the debtor).

White also argues that sections 523(a)(4) and (6) are inapplicable for a variety of reasons, but Trilogy only moves for summary judgment under section 523(a)(2)(A), and Trilogy has never claimed nondischargeability under section 523(a)(6). Therefore, the Court will disregard these arguments. See Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

In the event this matter goes to trial, Trilogy will need to submit evidence explaining the derivation of the amount awarded in the State Court Judgment.

"The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." Husky Int'l Elec. Inc. v. Ritz , --- U.S. ----, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016).